IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

MARLO CHRISTY MUSSELMAN,  )          CASE NO.  1:21-CV-00769-CEF
                          )
            Plaintiff,    )          JUDGE CHARLES E. FLEMING
                          )
      vs.                 )          MAGISTRATE JUDGE
                          )          JONATHAN D. GREENBERG
COMMISSIONER OF SOCIAL    )
SECURITY,                 )          **REPORT & RECOMMENDATION**
                          )
            Defendant.    )


Plaintiff, Marlo Musselman ("Plaintiff" or "Musselman"), challenges the final decision of

Defendant, Kilolo Kijakazi,[1] Acting Commissioner of Social Security ("Commissioner"), denying her

applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423,

1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for

a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that

the Commissioner's final decision be VACATED AND REMANDED for further consideration consistent

with this opinion.

## I.    PROCEDURAL HISTORY

In April 2013, Musselman filed an application for POD, DIB, and SSI, alleging a disability onset

date of June 17, 2011 and claiming she was disabled due to high anxiety, depression, diabetes,

"degen/bck," and arthritis. (Transcript ("Tr.") 129, 144, 161, 182, 1166.)  The applications were denied

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

initially and upon reconsideration, and Musselman requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 1166.)

On April 3, 2015, an ALJ held a hearing, during which Musselman, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.* at 208.) On June 15, 2015, the ALJ issued a written decision finding Musselman was not disabled. (*Id.* at 208-21.) The Appeals Council reversed that hearing decision for several reasons, including the following:

> The hearing decision indicates the claimant has the severe impairment of history of irritable bowel syndrome (Finding 3). However, the assessed residual functional capacity does not appear to contain any corresponding limitations. Further evaluation of the effects of the claimant's history of irritable bowel syndrome on her residual functional capacity is warranted.

(*Id.* at 230.)

On May 5, 2017, an ALJ held a hearing, during which Musselman, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.* at 15.) On November 30, 2017, the ALJ issued a written decision finding Musselman was not disabled. (*Id.* at 15-26.) The ALJ's decision became final on April 4, 2018, when the Appeals Council declined further review. (*Id.* at 1-6.) Musselman appealed to the district court, and in February 2019 the parties agreed to remand this matter for another hearing. (*Id.* at 1322-23.)

After the remand, but before a new hearing was scheduled, Musselman filed a Title II application for widow's insurance on the record of her deceased husband. (*Id.* at 1166.) That claim was escalated to the hearing level. (*Id.*)

On May 12, 2020, an ALJ held a hearing, during which Musselman, represented by counsel, testified. (*Id.* at 1167.) A vocational expert responded to interrogatories on May 8, 2020. (*Id.*) On June 1, 2020, the ALJ issued a written decision finding Musselman was not disabled. (*Id.* at 1166-79.) The

2

ALJ's decision became final on February 12, 2021, when the Appeals Council declined further review. (*Id.* at 1151-57.)

On April 12, 2021, Musselman filed her Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 13-1, 16-17.) Musselman asserts the following assignments of error:

(1) Remand is required because the Administrative Law Judge (ALJ) failed to consider whether Ms. Musselman was unable to perform work on a regular and sustained basis for any continuous period of 12 months.

(2) Remand is required because the ALJ failed to consider and accommodate the vocational impact of Ms. Musselman's admittedly severe gastrointestinal impairments.

(3) Remand is required because the ALJ made numerous additional errors that combined to violate Ms. Musselman's right to due process.

(4) Remand is required because the appointment of Andrew Saul as a single commissioner of SSA who was removable only for cause and would serve a longer term than the president violated separation of powers, rendering the decision in this case by an ALJ and Appeals Council judges who derived their authority from Mr. Saul constitutionally defective.

(Doc. No. 13-1.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Musselman was born in November 1968 and was 51 years-old at the time of her administrative hearing (Tr. 1166, 1177-78), making her a "person closely approaching advanced age" under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).  She has at least a high school education and is able to communicate in English.  (Tr. 1178.)  She has no past relevant work.  (*Id.*)

3

**B.      Medical Evidence[2]**

On January 31, 2013, Musselman saw Michael Schulman, D.O, for gastroenterology follow up. (Tr. 792.)   Musselman reported GERD symptoms that woke her up at night, as well as constipation for the past three to four weeks when she used to have diarrhea.  (*Id.* at 793.)  Musselman also complained of radiating pain in her left side.  (*Id.*)  Musselman's diagnoses included Vitamin D and iron deficiencies, uncontrolled diabetes, dyslipidemia, abdominal pain, colon polyps, fatty liver, GERD, hiatal hernia, hoarseness, IBS, nausea, and vomiting.  (*Id.* at 797.)  Dr. Schulman prescribed medication.  (*Id.* at 798.)

On August 8, 2013, Musselman underwent a physical consultative examination by Michael Rosenberg, M.D.  (*Id.* at 779.)  Musselman reported a history of diabetes, fibromyalgia, GERD, abdominal pain, irritable bowel syndrome, arthritis, hypertension, neuropathy, paresthesias, back pain, PCOS, and panic attacks.  (*Id.* at 779-80.)  On examination, Dr. Rosenberg found a normal gait, full range of motion in her neck, 18/18 tender points, and decreased range of motion in her back.  (*Id.* at 781-83.)

On August 20, 2014, treatment providers admitted Musselman to the hospital for complaints of abdominal back pain for a few days before admission, which was determined to be active pancreatitis. (*Id.* at 844.)   Musselman's diagnoses consisted of acute pancreatitis, gastroparesis, Type II diabetes, osteoarthritis, GERD, and gastritis.  (*Id.*)  Michael Saccente, D.O., discharged Musselman on August 30, 2014. (*Id.*)

On September 16, 2014, Musselman saw Dr. Schulman for follow up regarding her chronic pancreatitis.  (*Id.* at 895.)  Musselman complained of continued abdominal pain.  (*Id.*)  A CT scan since her last visit showed pancreatitis, while an EGD showed food and a biopsy revealed chronic gastritis. (*Id.*)  Dr. Schulman noted Musselman had not been seen in a year.  (*Id.*)  Musselman reported thin bowel movements followed by diarrhea, continued pain that felt like her gallbladder, although her gallbladder

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

had been removed, and nausea. (*Id.*) On examination, Dr. Schulman found moderate tenderness of the upper abdomen, quiet bowel sounds, and no hernias. (*Id.* at 897.) Dr. Schulman suspected chronic pancreatitis and gastroparesis. (*Id.* at 897-98.) Dr. Schulman recommended an endoscopic ultrasound. (*Id.* at 898.)

On July 24, 2015, Musselman saw Dr. Schulman for follow up after undergoing a colonoscopy and EGD. (*Id.* at 1118.) The colonoscopy revealed colon polyps and hemorrhoids, and a biopsy showed tubular adenoma. (*Id.*) The EGD and biopsy showed chronic gastritis. (*Id.*) Musselman reported worsening abdominal pain and nausea. (*Id.*) On examination, Dr. Schulman found diffuse abdominal tenderness to palpation, no hernias, and soft abdomen. (*Id.* at 1120.)

On October 29, 2015, Musselman saw Dr. Schulman for follow up of her GERD and IBS. (*Id.* at 1123.) Musselman reported abdominal bloating and diarrhea, both of which had worsened since her last visit, nausea and vomiting that came out of nowhere, and abdominal pain that radiated to her left back. (*Id.*) On examination, Dr. Schulman found diffuse abdominal tenderness to palpation, no hernias, and normal bowel sounds. (*Id.* at 1126.)

On August 10, 2016, Musselman saw Dr. Schulman for follow up of her EGD from nine months before, which revealed food in her stomach and hiatal hernia. (*Id.* at 1128.) Dr. Schulman noted Musselman was six months late for her follow up appointment. (*Id.*) Musselman reported severe nausea and frequent vomiting, and that she had been throwing up her medications with only occasional relief with Zofran. (*Id.*) Musselman further reported six to eight loose bowel movements a day, as well as cramping pain on her right side. (*Id.*) On examination, Dr. Schulman found vocal hoarseness and diffusely tender abdomen. (*Id.* at 1131.)

From August 30, 2016 to September 2, 2016, Musselman was hospitalized for upper abdominal pain, nausea, and vomiting. (*Id.* at 924.) Kavita Rao, M.D., noted that Musselman's EGD workup was

5

negative and that her right upper quadrant pain "seems most consistent with severe hepatomegaly and capsular distension." (*Id.* at 925.)  Dr. Rao discharged Musselman in fair, improved, and stable condition. (*Id.*)

On September 15, 2016, Musselman saw Dr. Schulman for follow up of her recent emergency room visit.  (*Id.* at 1133.)  Musselman reported continuing to have breakthrough GERD symptoms a few times a week, continuing to have severe hoarseness, daily nausea and vomiting, daily epigastric pain, and daily abdominal pain.  (*Id.*)  Zofran twice a day gave her relief of her vomiting most of the time.  (*Id.*)  Musselman reported six bowel movements a day, consisting of formed stools initially and then followed by loose stool.  (*Id.*)  On examination, Dr. Schulman found no tenderness, normal bowel sounds, and no hernias.  (*Id.* at 1137.)

On March 6, 2017, Musselman saw endocrinologist Venkata Budharaju, M.D., for follow up of her uncontrolled Type II diabetes with peripheral neuropathy.  (*Id.* at 1064.)  Dr. Budharaju noted that after reviewing her blood sugar monitoring data, Musselman was "quite clearly [] noncompliant with dietary recommendations."  (*Id.*)  Dr. Budharaju determined Musselman was developing lipohypertrophy in her left arm as a result of injecting her insulin there.  (*Id.*)  Dr. Budharaju increased Musselman's diabetes medication and discussed the importance of avoiding high carbohydrate foods and alternating injection sites. (*Id.* at 1065.)

On April 15, 2017, treatment providers admitted Musselman to the hospital for complaints of abdominal pain.  (*Id.* at 1142.)  Mouna Bacha, M.D., found increased pancreatic enzyme, a concern for gastroparesis, and irritable bowel syndrome ("IBS") responsible for diarrhea.  (*Id.*)  Dr. Bacha noted Musselman was improving on the day of discharge.  (*Id.*)  Dr. Bacha discharged Musselman on April 19, 2017, with diagnoses consisting of multifactorial abdominal pain, IBS with diarrhea prominence, diabetes that was under control, gastritis, hyperlipidemia, and fatty liver disease.  (*Id.*)  Musselman was to follow

6

up with her gastroenterologist as an outpatient.  (*Id.* at 1143.)

From May 8, 2017 through May 18, 2017, Musselman was hospitalized for acute pancreatitis and an elevated triglyceride level.  (*Id.* at 1676.)  Dr. Bacha noted Musselman "improved slowly" during her hospital stay and that the endocrinologist adjusted Musselman's medication because of poorly controlled diabetes.  (*Id.*)  Musselman "spent a lot of time in the hospital secondary to continuing to have abdominal pain."  (*Id.*)  At discharge, Dr. Bacha found Musselman improved.  (*Id.*)  Musselman's diagnoses included acute pancreatitis with elevated triglyceride, hyperlipidemia, obesity, IBS, gastroparesis, hypertension, acute renal failure, fatty infiltrate of the liver, and hepatosplenomegaly.  (*Id.* at 1677.)  Musselman underwent an EGD during her hospital stay and the gastroenterologist cleared her for discharge.  (*Id.*)  Musselman was to follow up with her gastroenterologist on an outpatient basis.  (*Id.*)

On June 20, 2017, Dr. Bacha admitted Musselman for a right displaced distal fibular fracture after a fall.  (*Id.* at 2361.)  During her hospital stay, Musselman underwent surgery for her fracture, a CAT scan of her abdomen, and evaluation by a gastroenterologist.  (*Id.*)  On June 28, 2017, Musselman refused to go home and was sent to a rehabilitation center to continue her physical therapy.   (*Id.* at 2361-62.)  Musselman's diagnoses included ground level fall complicated by right nondisplaced distal fibula fracture, controlled diabetes, controlled pancreatitis, controlled hypertension, controlled hyperlipidemia, morbid obesity, and chronic renal failure, stage three.  (*Id.*)

On November 12, 2017, Timothy Light, D.O., admitted Musselman to the hospital for acute worsening of chronic diarrhea and abdominal pain.  (*Id.* at 3079.)  Dr. Light noted an abnormal CT of the abdomen and pelvis, a history of pancreatitis, history of IBS with diarrhea, ulcerative colitis, not on treatment, systemic inflammatory response syndrome at admission, anemia, gastroparesis, and obesity. (*Id.*)  Before being admitted, Musselman reported severe and frequent diarrhea for a week; at one point she went to the bathroom more than 15 times and at one point soiled her own clothing because it was so

7

uncontrollable.  (*Id.* at 3080.)  During her hospital stay, Musselman underwent a colonoscopy which was unremarkable except for some small hemorrhoids which were biopsied.  (*Id.* at 3079-80.)  Dr. Light noted Musselman's diarrhea spontaneously resolved.  (*Id.* at 3080.)  Musselman's diagnoses at discharge consisted of diarrhea and abdominal pain of unknown etiology.  (*Id.* at 3079.)  Dr. Light discharged her in stable and improved condition.  (*Id.* at 3080.)

On December 6, 2017, Musselman went to the emergency room after her husband came home and found her weak, lethargic, and confused.  (*Id.* at 3524.)  Musselman also reported abdominal pain.  (*Id.*)  Musselman's husband reported she needed help to the bathroom and then getting up off the toilet.  (*Id.* at 3527.)  Musselman reported increased fatigue, nausea, vomiting, lightheadedness, and diffuse abdominal pain, although she denied diarrhea.  (*Id.*)  A brain CT and abdominal/pelvis CT revealed no acute findings.  (*Id.* at 3533.)  Treatment providers discharged Musselman with instructions to follow up with her primary care physician the next day for further evaluation and treatment.  (*Id.*)

On February 1, 2018, Musselman went to the emergency room with complaints of shoulder pain, back pain, chest pain, and abdominal pain.  (*Id.* at 3590.)  Musselman reported flank pain that radiated to the middle of her chest, for which nothing helped, and right arm pain that had started a week ago but worsened that day.  (*Id.* at 3593.)  Musselman stated she had been taking a nap and woke up unable to feel her right arm.  (*Id.*)  Musselman could not lift her arm and reported continued arm pain in the emergency room.  (*Id.*)  She also complained of increased urination.  (*Id.*)  On examination, treatment providers found paraspinal musculature hypertonicity on the left, decreased full active range of motion of the right upper extremity, intact sensation, and general tenderness of the left shoulder.  (*Id.* at 3597.)  Treatment providers did not think Musselman was having a stroke and determined that her pain could be managed with outpatient care.  (*Id.* at 3600.)  Musselman's diagnoses included acute renal failure, abdominal pain, and back pain.  (*Id.* at 3601.)

Musselman was hospitalized from February 10, 2018 through February 15, 2018.  (*Id.* at 3739.) Treatment providers diagnosed Musselman with acute recurrent pancreatitis, with suspected etiology hypertriglyceridemia, Type II diabetes with gastroparesis, endogenous obesity, acute chronic renal failure, PCOS, hypertension, diabetic peripheral neuropathy, migraine headaches, chronic insomnia, and generalized anxiety disorder.  (*Id.*)  At discharge, Musselman was "much improved" and tolerated meals well.  (*Id.* at 3741.)  Treatment providers emphasized the importance of glycemic control, as it affected her triglycerides which were causing recurrent pancreatitis, and encouraged weight loss.  (*Id.*)

On March 1, 2018, Musselman saw Dr. Schulman for follow up of acute pancreatitis.  (*Id.* at 5509.)  Dr. Schulman noted Musselman's last appointment with him was in June 2017.  (*Id.*)  Musselman reported bilateral upper and mid-epigastric pain that radiated to her left back that was intermittent and not related to meals, and occasionally kept her up at night.  (*Id.*)  Musselman took Norco for the pain with mild relief.  (*Id.*)  Musselman further reported intermittent nausea and back pain that was worse with movement and lifting.  (*Id.*)  Musselman told Dr. Schulman she was having looser bowel movements and she was having 9-12 bowel movements a day.  (*Id.*)  Musselman reported a history of fecal incontinence that had been occurring daily for a few weeks before her hospitalization in February 2018 but denied any accidents in the past two weeks.  (*Id.*)  On examination, Dr. Schulman found tenderness to palpation of the epigastric area and right upper quadrant, normal bowel sounds, and no hernias.  (*Id.* at 5514.)

On March 11, 2018, treatment providers again hospitalized Musselman for recurrent pancreatitis. (*Id.* at 4139-40.)  On March 14, 2018, Musselman had an "acute episode of hypertension and diaphoresis," as well as a "sudden onset of generalized weakness."  (*Id.* at 4141.)  Musselman's diagnoses at discharge on March 16, 2018 consisted of poorly controlled diabetes with hyperglycemia on admission, acute chronic renal failure, stage III, suspected secondary to poorly controlled diabetes, diabetic nephropathy, anemia, hypertension, gastroparesis secondary to diabetes with failed Botox injections, worsening

9

hypertriglyceridemia, morbid obesity, chronic pain syndrome, fibromyalgia, PCOS, and possible ulcerative colitis.  (*Id.* at 4140.)

Musselman was hospitalized from April 6, 2018 through April 8, 2018, for hypotension secondary to taking all her medications around the same time.  (*Id.* at 4571.)  Treatment providers noted Musselman needed to space her medication over a period of at least three hours because of gastroparesis and autonomic neuropathy from diabetes.  (*Id.* at 4572.)  At discharge, treatment providers found Musselman in fair, improved, and stable condition.  (*Id.*)

On June 19, 2018, Musselman underwent an upper GI endoscopy by Dr. Schulman.  (*Id.* at 5518.) Dr. Schulman found abnormal motility of the esophagus, arytenoid edema, a large amount of food in the stomach, and retained food in the duodenum.  (*Id.* at 5518-19.)

On July 20, 2018, Musselman saw Dr. Schulman for follow up from her EGD.  (*Id.* at 5521.) Musselman complained of worsening abdominal bloating and belching, as well as abdominal pain that radiated into the mid-back.  (*Id.*)  Musselman reported diarrhea six to seven times a day.  (*Id.*)  On examination, Dr. Schulman found diffuse abdominal tenderness to palpation, normal bowel sounds, and no hernias.  (*Id.* at 5525.)

On August 31, 2018, Musselman went to the emergency room for epigastric pain that radiated to the right upper quadrant on and off for one week, as well as nausea and vomiting.  (*Id.* at 4829.)  A CT of the abdomen/pelvis revealed acute pancreatitis.  (*Id.* at 4833.)  Dr. Saccente ordered Musselman be admitted as an inpatient under his care.  (*Id.* at 4837.)   Dr. Saccente discharged Musselman home on September 7, 2018.  (*Id.* at 4858-59.)  Even at discharge, Musselman reported continued (although improved) abdominal pain, nausea with eating, and only tolerated small amounts of food.  (*Id.* at 4860.)

On November 28, 2018, Musselman saw Dr. Schulman for follow up regarding a change in bowel habits that had worsened since her last visit, as well as nausea and vomiting.  (*Id.* at 5529.)  Musselman

reported constipation and then loose stools with urgency and accidents twice a week.  (*Id.*)  Musselman also complained of flank pain that radiated to the upper abdomen.  (*Id.*)  On examination, Dr. Schulman found diffuse abdominal tenderness to palpation, normal bowel sounds, and no hernias.  (*Id.* at 5533.)

On January 4, 2019, Musselman went to the hospital with complaints of abdominal pain over the past few days that had worsened that day.  (*Id.* at 5202.)  Musselman reported constant aching pain in the right upper quadrant that radiated across her back and her abdomen.  (*Id.*)  Musselman further reported nausea and multiple episodes of diarrhea.  (*Id.*)  Lab work showed Musselman was hyponatremic and in renal failure.  (*Id.* at 5210.)  Treatment providers admitted Musselman to the hospital.  (*Id.*)  Musselman was discharged on January 10, 2019, with diagnoses of acute renal failure with likely CRF, nausea and vomiting, diabetes Type II, hypertension, obesity, PCOS, and opiate dependent chronic pain.  (*Id.* at 5198-99.)  Treatment providers determined Musselman's right upper quadrant pain was muscular and recommended trigger point injections as an outpatient.  (*Id.* at 5199.)

On July 25, 2019, Musselman saw Dr. Schulman for follow up regarding her abdominal pain.  (*Id.* at 5536.)  Musselman reported her abdominal pain remained unchanged since her last visit.  (*Id.*)  Musselman described her pain as severe and sharp.  (*Id.*)  Musselman further reported nausea, lack of energy or drive, alternating between constipation and diarrhea, and vomiting food from two days before.  (*Id.*)  Dr. Schulman noted Musselman had been in the hospital in January 2019 without any overt explanation for her symptoms.  (*Id.*)  On examination, Dr. Schulman found diffuse abdominal tenderness to palpation, normal bowel sounds, and no hernias.  (*Id.* at 5541.)

On April 9, 2020, Nitin Dhiman, M.D., completed interrogatories regarding Musselman's physical impairments.  (*Id.* at 5555-57.)  Dr. Dhiman listed Musselman's diagnoses as diabetes, fibromyalgia, GERD, hypertension, and osteoarthritis.  (*Id.* at 5555.)  Dr. Dhiman opined that Musselman could perform a range of light work, but could only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs,

never climb ladders, and must avoid exposure to environmental factors and working on unprotected heights.  (*Id.* at 5557.)

**C.     State Agency Reports**

**1.     Mental Impairments**

On July 16, 2013, Pamela Green, Ph.D., opined Musselman had mild limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace.  (*Id.* at 136-37, 151-52.)

On October 30, 2013, Renee McPherson Salandy, Ph.D., affirmed Dr. Green's findings on reconsideration.  (*Id.* at 170-72, 191-93.)

**2.     Physical Impairments**

On June 24, 2013, Lillian Mayo, SDM, opined Musselman could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and had an unlimited ability, other than shown for lift and/or carry, to push and/or pull.  (*Id.* at 138-41, 153-55.)  Dr. Mayo further opined Musselman could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (*Id.* at 139, 154.) Musselman could never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., as well as hazards.  (*Id.* at 140, 154-55.)

On November 1, 2013, Robert Whittier, M.D., affirmed Dr. Mayo's findings on reconsideration. (*Id.* at 174-76, 195-97.)

**D.     Hearing Testimony**

During the May 2020 hearing, Musselman testified to the following:

- She lives in a one-story house with her oldest and youngest sons, as well as their significant others.  (*Id.* at 1199.)

- She was hospitalized several times in 2017 for her pancreas, which caused excruciating pain.  (*Id.* at 1202.)  She also has symptoms from gastroparesis, GERD,

12

and IBS.  (*Id.* at 1203.)  She has bad acid reflux and would vomit two to three times a day; even medication would not stop the vomiting.  (*Id.*)  Her IBS causes her to go to the bathroom several times a day, and she has no control over it; she struggles making it to the bathroom from her bed, which is in the same room.  (*Id.*)  The gastroparesis causes bad stomach cramps and means her stomach is not emptying.  (*Id.* at 1203-04.)  No change of position relieves the pain, which is constant.  (*Id.* at 1204.)  She sometimes goes days without eating because of the stomach pain or she is throwing it right up again.  (*Id.* at 1205.)  She was hospitalized in January 2019 for sharp, excruciating pain in her back.  (*Id.* at 1206-07.)

- She stopped working because of her IBS with diarrhea, as she was having accidents on her way into work.  (*Id.* at 1208.)  She still has bowel incontinence.  (*Id.* at 1209.)  She last had one two nights before the hearing.  (*Id.*)

- Her voice is hoarse from her acid reflux burning her throat.  (*Id.* at 1211.)  Her voice has been like that for several years.  (*Id.* at 1212.)  She could undergo surgery, but she could lose her voice altogether.  (*Id.*)

By way of interrogatories before the hearing, the ALJ posed the following hypothetical question:

> The claimant can lift 20 pounds occasionally and 10 pounds frequently; sit 6 hours per day; stand 2 hours per day; walk to [sic] hours per day; never climb ladder/rope/scaffold; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl; frequently reach, handle, finger, feel; and must avoid vibration, temperature extremes, pulmonary irritants, hazardous machinery and heights.

(*Id.* at 1497.)

The VE responded that the hypothetical individual would be able to perform representative jobs in the economy, such as nut and bolt assembler, ticket taker, and scale operator.  (*Id.* at 1498.)

The ALJ then added a limitation that the hypothetical individual would miss work at least two days a month or would be off task at least 15% of the day.  (*Id.*)  The VE responded that the absentee rate or the time off task would preclude all work in the national economy.  (*Id.* at 1499.)

### III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to

13

"result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).    Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment

14

does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Musselman was insured on her alleged disability onset date, June 17, 2011, and remained insured through December 31, 2011, her date last insured ("DLI").  (Tr. 1166-67.)  Therefore, in order to be entitled to POD and DIB, Musselman must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.    It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50.  The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3.    The prescribed period ends on July 31, 2026.

4.    The claimant has not engaged in substantial gainful activity since June 17, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

5.    The claimant has the following severe impairments: degenerative disc disease, gastritis, hypertension, inflammatory arthritis, inflammatory bowel disease, gastroesophageal reflux disease, fibromyalgia, diabetes mellitus, osteoarthritis, pancreatitis, ulcerative colitis, chronic kidney disease, dyslipidemia, anemia, and obesity (20 CFR 404.1520(c) and 416.920(c)).

6.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift twenty pounds

15

occasionally and ten pounds frequently; sit six hours per day; stand two hours per day; walk two hours per day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently reach, handle, finger, feel; and must avoid vibration, temperature extremes, pulmonary irritants, hazardous machinery and heights.

8.     The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

9.     The claimant was born on November **, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

10.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

12.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

13.     The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 1169-79.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y*

*of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D.

17

Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In her second assignment of error, Musselman asserts the ALJ erred in failing "to consider and accommodate the vocational impact" of Musselman's gastrointestinal impairments, which the ALJ found to be severe at Step Two.  (Doc. No. 13-1 at 1.)  Musselman argues the ALJ adopted no limitations in the RFC related to these impairments.  (*Id.* at 8.)  Musselman notes her case "has been remanded twice due to similar errors in evaluating [her] gastrointestinal impairments" (*id.*) (citing Tr. 230, 1328), and her case is now before this Court "for the exact same failure."  (*Id.* at 8-9.)  Musselman argues the ALJ should have considered her need to use the bathroom immediately on an unscheduled basis and her time off task while in the bathroom.  (*Id.* at 9) (citations omitted).  Musselman asserts her need for additional and unscheduled bathroom breaks "is a critical issue in this case," as two VEs at previous hearings testified that an individual suffering from uncontrolled and unpredictable bowel incontinence could not work, nor could an individual requiring unpredictable, prolonged bathroom breaks.  (*Id.* at 10) (citing Tr. 1281, 62-63.)

The Commissioner responds that substantial evidence supports the ALJ's RFC.  (Doc. No. 16 at 18.)  The Commissioner argues the ALJ recognized Musselman was hospitalized several times for abdominal pain, diarrhea, and similar symptoms; however, the ALJ weighed that evidence against evidence that Musselman's "presentations to the hospital did not always demand admission; that [her] non-compliance with her diabetes treatment led to at least one hospitalization related to her pancreatitis;

18

and that [her] need for hospitalization was undermined by her failure to seek consistent outpatient treatment for her gastrointestinal impairments." (*Id.* at 19.)  The Commissioner further argues, "There is no objective evidence in the record that Plaintiff needed to use the restroom immediately, or take unscheduled breaks, or spend time off task while in the bathroom," and "not a single medical source opined" Musselman had such limitations. (*Id.* at 21.)

In her reply brief, Musselman responds that the Commissioner's assertion that there was "no 'objective evidence'" of limitations from her gastrointestinal impairments is contrary to the ALJ's own findings. (Doc. No. 17 at 3.)  In addition, Musselman asserts the Commissioner ignores the fact that her case has been remanded twice before for this same error. (*Id.*)

At Step Two of the sequential evaluation, an ALJ must determine whether a claimant has a "severe" impairment. *See* 20 C.F.R. §§ 404.1520(a)(40)(ii), 416.920(a)(40)(ii ).  To determine if a claimant has a severe impairment, the ALJ must find that an impairment, or combination of impairments, significantly limits the claimant's physical or mental ability to do "basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  "An impairment ... is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include: (1) physical functions such as standing, sitting, lifting, handling, etc.; (2) the ability to see, hear and speak; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985). *See also Anthony v.*

*Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe."  SSR 96–3p, 1996 WL 374181, at *1 (July 2, 1996).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(2).  An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination.  *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")).  *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")).  While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

20

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

At Step Two, the ALJ found Musselman's gastritis, inflammatory bowel disease, GERD, and ulcerative colitis to be severe impairments.  (Tr. 1169.)  In the RFC analysis, the ALJ found as follows:

> At the hearing, the claimant testified to multiple hospitalizations due to pancreatitis.  She testified to experiencing acid reflux, abdominal pain, and vomiting prior to the hospitalizations.  The claimant further testified to bowel incontinence due to irritable bowel syndrome.  Additionally, she testified to neuropathy in her bilateral lower extremities and chronic pain in her back.  The claimant alleged she cannot lift more than an eight ounce

glass of water or juice, sit more than two or three minutes at a time, walk for more than two or three minutes, or stand for more than a couple of minutes.

* * *

The longitudinal treatment history fails to support the claimant's allegations of disabling pain.  Although the claimant occasionally sought treatment for pain from specialists such as rheumatologists, she mostly relied on conservative treatment from primary care providers.  Rather, there is little, if any, evidence of specialized treatment from pain after 2011.  Moreover, despite the conservative outpatient treatment, there are few, if any, emergency room visits or hospitalizations due to exacerbated pain.  As discussed in more detail below, the emergency room visits and hospitalizations of record mostly stemmed from gastrointestinal impairments.

* * *

Turning to the allegations of disabling limitations from gastrointestinal impairments, the longitudinal treatment history lends some support to the allegations, but suggests fewer limitations than generally alleged.  The undersigned acknowledges the numerous emergency room visits and hospitalizations documented in the record due to abdominal pain, diarrhea, and similar symptoms (Exhibits B12F, B13F, B30F, B34F, B37F, B38F, B40F, B42F, and B43F).  These records tend to suggest at least some of the claimant's symptoms were genuine.  However, some visits led to prolonged hospitalizations, but other times the claimant was discharged the same day due to negative workups.  Moreover, the last emergency room record appears to be from June 2019, which was nearly a year prior to the date of this hearing.

* * *

Furthermore, the repeated hospitalizations are undermined by the outpatient treatment record.  As explained above, the claimant sought treatment from a gastroenterologist.  However, the claimant sought treatment less often than one might reasonably expect given the allegations of disabling symptoms.  Likewise, the doctor noted gaps in the treatment history.  For example, during a follow-up outpatient visit after an August 2014 hospitalization, Dr. Schulman reported the claimant had not been seen in the office in one year (Exhibit B13F).  Similarly, during a follow-up outpatient appointment following a hospitalization in March 2018, Dr. Schulman noted the claimant was last seen in the office in June 2017 (Exhibit B44F).  One could reasonably argue that the emergency room visits or hospitalizations could have, at least in part, been minimized with more frequent or consistent outpatient treatment.

22

(*Id.* at 1174-76.)

The Court finds the ALJ failed to properly consider Musselman's severe gastrointestinal impairments in the RFC analysis.  Musselman testified to ongoing bowel incontinence at her most recent hearing.  (*Id.* at 1208-09.)  The record reflects Musselman sought treatment for bowel incontinence (*id.* at 3080, 5509, 5529) and having several (from 5-15) bowel movements a day.  (*Id.* at 1128, 1133, 3080, 5509, 5521.)  The ALJ failed to address this evidence in his opinion.  (*Id.* at 1174-77.)  Moreover, the reasons given to discredit Musselman's gastrointestinal complaints – that she was not always admitted to the hospital, her last emergency room visit occurred in June 2019, and more consistent outpatient treatment could have minimized her hospitalizations – do not serve to undercut or discredit Musselman's persistent reports of bowel incontinence and several bowel movements a day.  As set forth in detail above, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability.  This Court must remand for the ALJ's failure to address the contrary evidence in the record regarding Musselman's bowel incontinence and need for unscheduled bathroom breaks.

As this matter is already being remanded for error in the ALJ's RFC analysis, in the interest of judicial economy, the Court declines to reach Musselman's additional assignments of error.

## VII.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further consideration consistent with this opinion.

Date: April 14, 2022

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

23

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).